## Overbrook Steam Heat Company v. Commonwealth

*Warren S. Spalding,* for plaintiff.

*Paul D. Larimer,* assistant counsel of Public Utility Commission, *Harry M. Showalter,* counsel of Public Utility Commission and *Claude T. Reno,* Attorney General, for Commonwealth.

Fox, J., December 2, 1940.—This matter comes before us upon a case stated in which the court is to render judgment.

The facts stated in the case may briefly be set forth as follows: That the Public Utility Commission directed its bureau of accounts, rates, and statistics to make an examination of the accounts of plaintiff; that pursuant to said executive order the said bureau of accounts made an investigation without any prior notice to plaintiff; the

latter made available to the investigator its accounts, etc., as requested, and the investigation was made by one Peters, who was assisted part of the time by one Isenberg, the former having spent a period of 49 days and the latter 9 days in the examination; that, after the examination, the Commonwealth presented to plaintiff a bill in the amount of $882.10 for the salaries and traveling expenses of the said employes of the commission. The investigation was made under section 1201(b) of the Public Utility Law of May 28, 1937, P. L. 1053. Section 1201(b) of the said act provides:

"Whenever the commission, in a proceeding upon its own motion on complaint, or upon an application to it, or in connection with a securities certificate filed with it, shall deem it necessary to investigate the books, records, accounts, practices, and activities of, or make appraisals of the property of, or to render any engineering or accounting service to, any person or corporation, the salaries and traveling expenses of commission employees, and office space expenditures specifically attributable to such investigation, appraisal, or service, shall be charged to, and paid by, such person or corporation, and shall not be included in the expenses of the commission for the purpose of making assessments generally under this section; but the amount so charged to, and paid by, any such person or corporation during any one calendar year shall not exceed one per centum of the gross operating revenues of such person or corporation during the next preceding fiscal year."

The question before us is a narrow one, involving only the construction of the phrase "whenever the commission, in a proceeding upon its own motion on complaint, or . . . shall deem it necessary to investigate the books, records, accounts, practices, and activities."

The contention of plaintiff is, that the commission was not empowered on its own motion to make the investigation as it did, because no complaint was made, one being first required before the commission could act. Plaintiff

filed objections to the payment of the bill. A hearing was had before the commission on April 14, 1938, and the latter, by order dated March 13, 1939, dismissed the objections of plaintiff to the bill, whereupon the latter on March 22, 1939, paid the said special bill or assessment under protest; on November 29, 1939, plaintiff brought this action under authority of section 1201(b) of the said act for the recovery of the said sum of $882.10.

The following questions are submitted for determination by the court:

"Was the Public Utility Commission of Pennsylvania authorized by section 1201(b) to levy a special assessment for the traveling expenses and salaries of employes engaged in an investigation where (a) the commission instituted the said investigation of its own motion; and where (b) no written complaint was filed or served on plaintiff company?

"If the court is of the opinion that the commission had no authority to charge plaintiff company with a special assessment under section 1201(b) of the Public Utility Law of 1937, then the court is respectfully requested to enter judgment in favor of plaintiff in the sum of $882.10.

"If the court is of the opinion that section 1201(b) of the Public Utility Law of 1937 authorized the said special assessment under the facts stated, then judgment is to be entered for defendant.

"Both plaintiff and defendant reserve the right to appeal."

The contention of the Commonwealth is that it was empowered to make the investigation, without any complaint, on its own motion.

### Discussion

There is nothing in the pleadings in this suit or in the case stated to show how this investigation arose. It is stated in the brief of the Commonwealth, but we must take the case as stated.

The Public Utility Law, supra, is a broad and comprehensive one largely relating to the regulation of public utilities. The words in section 1201(b), supra, "Whenever the commission, in a proceeding upon its own motion on complaint," must receive a reasonable construction. From the punctuation as appears in the said subsection (b), it is properly construed that the commission cannot proceed upon its own motion without having had a complaint. A study of the act shows that the commission on its own motion only may act, viz, in sections 306, 308, 309, 310, 312, 404, 405, 408, 409, 412, 413, 419, 810, 920, 1001, all relating to different subjects of public service (312 relating to the regulation of rates), on its own motion or complaint and on its own motion in 1008. The adoption of plaintiff's contention would proceed from the punctuation as appears in the act.

In the case of Commonwealth v. Reimel, 68 Pa. Superior Ct. 240, 242, the court said:

"As was said in Com. v. Shopp, 1 Woodward 123, 130: 'The marks of punctuation are added subsequently by a clerk or a compositor, and this duty is performed very frequently in an exceedingly capricious and novel way.' Punctuation is not conclusive in the construction of a statute: Gyger's Est., 65 Pa. 311; Montgomery's Est., 63 Pa. Superior Ct. 318; and will not be considered when the sense is clear: Com. v. Taylor, 159 Pa. 451."

In Settlement of Indigent Persons, 20 D. & C. 94, an opinion by the Attorney General, it is said:

"Punctuation contained in the printed volumes of Pennsylvania acts of assembly is not official, and cannot control the interpretation of an act."

In sections 51 and 53 of the Statutory Construction Act of May 28, 1937, P. L. 1019, it is said:

"Section 51. Construction of Laws; Legislative Intent Controls.—The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions. . . .

"Section 53. Grammar and Punctuation of Laws.— Grammatical errors shall not vitiate a law. A transposition of words and clauses may be resorted to where a sentence is without meaning as it stands.

"In no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment thereof.

"Words and phrases which may be necessary to the proper interpretation of a law and which do not conflict with its obvious purpose and intent, nor in any way affect its scope and operation, may be added in the construction thereof."

Section 1008 of the Public Utility Law, supra, reads as follows:

"Investigations.—The commission may, on its own motion and whenever it may be necessary in the performance of its duties, investigate and examine the condition and management of any public utility or any other person or corporation subject to this act. In conducting such investigations the commission may proceed, either with or without a hearing, as it may deem best, but it shall make no order without affording the parties affected thereby a hearing."

To construe the phrase in question as contended by the plaintiff, viz, that the commission had no power to act on its own motion, without a complaint having been first made, would make the words "upon its own motion" nugatory; they would be meaningless.

We are inclined to agree with the Commonwealth that the trouble has arisen with erroneous punctuation. Proper punctuation would have placed a comma after "proceeding" and another comma after "motion". We may not assume that the legislature intended the words "upon its own motion" to be meaningless.

Considering the whole act, viz, its purposes, powers, and duties, the broad powers of the commission, we are of the opinion that the legislature did not intend by section 1201 (b) to limit the commission in proceeding upon

its own motion on a complaint, but that it intended the commission to proceed on its own motion, or on complaint, or upon application to it.

Plaintiff contends in its brief that this matter is res adjudicata under the opinion of this court filed February 26, 1940. Plaintiff had brought the suit to the above number for the recovery of said sum, which it had paid under protest, $882.10. The Commonwealth filed an affidavit of defense raising questions of law and after hearing and argument we did not sustain the affidavit of defense raising questions of law, and, inter alia, said:

"For the purposes of the matter now before us, the averments in plaintiff's statements must be taken as true. It is averred in the statement that there was no complaint filed with the commission, and therefore the commission under section 1201 (b) was without authority to make the investigation and to charge the cost thereof to plaintiff.

"We are of opinion that the affidavit of defense raising questions of law cannot be sustained, for the reason that the commission therein admits it proceeded under section 1201(b), which requires a complaint, and for the purposes of the matters as now before us, we are compelled to take the averment that no complaint was filed to be true, and the affidavit should be dismissed; defendant should be given 15 days from the date of the filing of this opinion to file an affidavit of defense to the merits of the case."

We do not regard that as res adjudicata of the matter now before us. At any rate plaintiff has joined in the case stated and obviously did not rely upon the position it now takes that it is res adjudicata.

Wherefore we are of the opinion that section 1201(b) of the Public Utility Law, supra, did authorize the special assessment under the facts stated and that judgment should be entered for defendant.

And now, December 2, 1940, upon due consideration, judgment is directed to be entered for defendant.